# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| MARIA R. CARRASCO,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    CAUSE NO.: 2:18-CV-31-JEM |
| | ) |
| NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Maria R. Carrasco on January 23, 2018, and Plaintiff's Memorandum in Support of her Motion to Reverse the Decision of the Commissioner of Social Security [DE 17], filed on June 27, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On July 31, 2018, the Commissioner filed a response, and Plaintiff filed a reply on August 30, 2018.

**I.     Background**

On June 27, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she became disabled on November 18, 2011. Plaintiff's applications were denied initially and upon reconsideration. On September 27, 2016, Administrative Law Judge ("ALJ") Michael Pendola held a hearing at which Plaintiff, with an attorney representative, and a vocational expert testified. On February 1, 2017, the ALJ issued a decision finding that Plaintiff was not disabled, and Plaintiff appealed the decision.

The ALJ made the following findings under the required five-step analysis:

1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.

2. The claimant has not engaged in substantial gainful activity since November 18, 2011, the alleged onset date.

3. The claimant has the following severe impairment: degenerative disc disease of the cervical and lumbar spine post surgery.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she should never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs and stoop; she can frequently balance, kneel, crouch, and crawl.

6. The claimant is capable of performing past relevant work as a factory helper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 18, 2011, through the date of the decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse

only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must

3

"'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

In this appeal, Plaintiff argues that the ALJ's RFC analysis fails to properly assess Plaintiff's mental impairments, her difficulty bending, and her dizziness. Plaintiff also argues that the ALJ erred at step four by failing to make findings of fact as to the mental and physical demands of Plaintiff's past job. Finally, Plaintiff contends that the ALJ erred at step five in analyzing Plaintiff's ability to adjust to other work in the economy. The Court considers each argument in turn.

### A. Residual Functional Capacity

The residual functional capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996). This is a "function-by-function assessment based upon all of the relevant evidence

4

of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

   *1.    Mental Impairments*

Plaintiff was diagnosed with adjustment disorder, *see* AR 558 (10/13/2014), 593 (10/14/2014); major depression, *see* AR 595 (12/11/2014), 709 (3/30/2015), 748 (1/20/2015), 750 (2/10/2015), 751 (5/5/2015), 754 (6/16/2015), 755 (6/30/2015); and panic disorder, *see* AR 595 (12/11/2014), 617 (12/22/2014), 619 (1/5/2015), 756 (8/14/2015), 757 (8/28/2015), 758 (9/10/2015), 759 (10/9/2015), 760 (11/5/2015), 761 (2/17/2016), 762 (3/15/2016), 763 (3/29/2016), 764 (4/30/2016), 765 (5/4/2016), 766 (6/2/2016), 767 (6/16/2016), 768 (7/1/2016).

At step two of the sequential evaluation, the ALJ found that Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination" are not severe. AR 31. The ALJ noted that Plaintiff did not allege any mental health issues in her initial report to the Social Security Administration but later reported feeling depressed and anxious in her August 2014 Disability Report-Appeal, which the ALJ commented was years after Plaintiff stopped working. *Id.* The ALJ noted Plaintiff's hearing testimony that she had been getting treatment for the previous two years; that she was affected when her company did not admit her back to work;

5

that she feels anxious, cries, and cannot find tranquility; and that she has panic attacks. *Id*. The ALJ commented that Plaintiff's medical treatment records sporadically mention anxiousness and depression. *Id*. (citing Ex. 16F). However, the ALJ also noted that Plaintiff stated that she does not take medications because they do not work, which the ALJ found supports non-compliance with treatment and an unwillingness to try other medications. *Id*. (citing Ex. 16F/7). The ALJ recognized that Plaintiff attended some counseling but had gaps in treatment, which the ALJ found supported non-compliance or suggests that her symptoms are not as severe as Plaintiff indicated. *Id*. at 31-32 (citing Ex. 14F).

The ALJ then summarized the record of Plaintiff's mental health evaluation and treatment, including the October 13, 2014 psychological consultative exam by Dr. Scully, who diagnosed adjustment disorder with depressed mood; the October 14, 2014 evaluation at Regional Health with counselor Sonia Torres; the November 19, 2014 and December 11, 2014 treatment with Dr. Helen Williams, who diagnosed "chronic major depression and panic without agoraphobia"; Plaintiff's subsequent cancellation of appointments with Dr. Williams in December 2014; treatment with Dr. Rene Roberts on February 10, 2015; May 2015 counseling and subsequent monthly counseling through July 2016; and Plaintiff's travel to Mexico in August 2015 during which she experienced no pain.

The ALJ then considered the four functional areas for evaluating mental disorders in 12.00C of the Listing of Impairments and found that Plaintiff has a mild limitation in understanding, remember, or applying information; no limitation in interacting with others; mild limitation in concentration, persistence, and pace; and no limitation in adapting or managing oneself. AR 33-34.

6

Finally, still in step two, the ALJ discussed the opinions of non-examining state agency psychological consultants Dr. Johnson and Dr. Horton. AR 35. On October 16, 2014, Dr. Johnson opined that Plaintiff had a non-severe affective disorder with no or mild limitations in the four functional areas. *Id*. The ALJ noted that Dr. Johnson had considered the consultative psychological exam, mental status exam findings, and Plaintiff's activities and abilities. *Id*. The ALJ then noted that Dr. Horton affirmed Dr. Johnson's assessment on February 3, 2015, at the reconsideration level. *Id*. The ALJ gave these opinions great weight. *Id*.

The ALJ did not incorporate any mental limitations in the RFC determination despite finding that Plaintiff suffered from the medically determinable mental impairments of "depression" and "anxiety." In explaining the basis for the mental RFC, the ALJ wrote:

> The record does not support any resulting limitations from her non-severe mental health impairment. The claimant participated in conservative routine mental health treatment with gaps and consistently had normal mental status exam findings throughout the record. The claimant engages in many activities including managing and caring for her household, minor children, brother, husband and travelling out of state and out of the country. The record does not support any additional limitations.

AR 43.

Plaintiff argues that, notwithstanding the finding that her mental impairments were not severe, the ALJ should have considered her medically determinable impairments of adjustment disorder, major depression, and panic disorder in assessing Plaintiff's RFC as required in the regulations. Indeed, the regulations provide: "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity." 20 C.F.R. §§ 404.1545(a)(2),

7

416.945(a)(2). As noted above, the ALJ briefly mentioned Plaintiff's "mental health impairment" in assessing the RFC and, thus, "considered" the nonsevere impairments. However, for several reasons raised by Plaintiff, that brief analysis resulting in no mental limitations in the RFC is not supported by substantial evidence in light of a deficient step two analysis of Plaintiff's mental impairments.

First, Plaintiff argues that the 2016 holding in *O'Connor-Spinner v. Colvin* calls into question whether Plaintiff's diagnosis of major depression can be considered nonsevere. *See O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016). In *O'Connor-Spinner*, the claimant had diagnoses of major depression and adjustment disorder, similar to Plaintiff's diagnoses of major depression, adjustment disorder, and panic disorder in this case. *See id*. at 691-93. The Seventh Circuit Court of Appeals rejected as "nonsensical" the ALJ's finding that a disability claimant's diagnosis of "major depression, recurrent severe" is not a severe impairment. *Id*. at 697. The court noted that a "diagnosis of 'major depression' means, *by definition*, that an individual's 'symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" *Id*. at 693 (quoting AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS, 356 (4th ed. text revision 2000)). The court further noted that it had "not found a published opinion from any circuit in which an ALJ declared that major depression was not a severe impairment, although two unpublished soundly reject this assertion." *Id*. at 697. The court in *O'Connor-Spinner* also held that the ALJ erred in not including in the RFC mental limitations due to the claimant's major depression. *Id*. at 698-99.

8

Like in *O'Connor-Spinner*, the ALJ in this case found that Plaintiff's chronic major depression, adjustment disorder, and panic disorder, which the ALJ characterized as medically determinable impairments of "depression and anxiety," were not severe. Also like in *O'Connor-Spinner*, the ALJ did not include any mental limitations in Plaintiff's RFC despite ongoing treatment records noting serious symptoms for eighteen months after the consultative psychological reviewing opinions were given. Plaintiff argues that these errors, identical to those in *O'Connor-Spinner*, require remand. The Commissioner does not respond to this argument or address *O'Connor-Spinner*.

In this case, the ALJ's finding that Plaintiff's mental impairments were not severe appears to be based largely on the opinions of state agency reviewing physicians Dr. Johnson and Dr. Horton. As argued by Plaintiff, the ALJ erred in giving great weight to these opinions because the opinions were formulated prior to Plaintiff's diagnoses of major depression and panic disorder and prior to eighteen months of monthly therapy and treatment. Dr. Johnson's October 16, 2014 opinion and Dr. Horton's February 3, 2015 opinion only reference Plaintiff's initial diagnosis of adjustment disorder, which was made by Dr. Scully at the consultative psycholgoical examination on October 13, 2014. (AR 128-29, 137-38, 149-51, 159-61). Thus, it appears that Dr. Johnson and Dr. Horton were not aware that Plaintiff had also been diagnosed with major depression and panic disorder. This is similar to the state agency reviewing physician in *O'Connor-Spinner*, who noted only the mental impairment of bipolar disorder but did not appear to have noticed the diagnosis of depressive disorder. 832 F.3d at 694.

In addition, much of Plaintiff's mental health treatment occurred after Dr. Johnson and Dr. Horton offered their opinions, with monthly therapy beginning in January 2015 and continuing

9

through July 2016. Contrary to these records and without explanation, the ALJ commented that "nothing in the later obtained medical evidence . . . would warrant any different findings" than those made by Dr. Johnson and Dr. Horton. AR 35.

The ALJ failed to recognize that neither reviewer was aware of the subseuqent diagnoses of major depression and panic disorder and failed to acknowledge the impact that the subsequent treatment records might have on those reviewers' opinions. *Id*. As a result, the opinions of Dr. Johnson and Dr. Horton are "essentially worthless" and entitled to little weight because the reviewing doctors did not have access to all of Plaintiff's mental health records. *See Childress v. Colvin*, 845 F.3d 789, 792 (7th Cir. 2017). Notably, the Commissioner's response brief did not address Plaintiff's argument that the ALJ erred in relying on the opinions of Dr. Johnson and Dr. Horton.

Plaintiff further contends that the ALJ's conclusion regarding Plaintiff's sadness is not supported by the record. The ALJ wrote, "Reasonably, one would be emotional when discussing situational stressors, but these heightened emotions are not supported in the ongoing record." AR 35. This assumption is belied by the numerous references in the record and in Plaintiff's testimony to Plaintiff crying and exhibiting sadness beyond simply "discussing situational stressors." *See* AR 112 (testimony), 409 (6/21/2012), 551 (9/26/2014), 557 (10/13/2014), 568 (10/14/2014), 597 (10/22/2014), 614 (12/11/2014), 708 (4/22/2016), 761 (2/17/2016), 841 (11/13/2014). The Commissioner also did not respond to this argument.

Because the ALJ's mental RFC determination is not supported by substantial evidence, remand is required. *See O'Connor-Spinner*, 832 F.3d at 697; *Meuser v. Colvin*, 838 F.3d 905, 910-

11 (7th Cir. 2016) (explaining that the functional limitations caused by an impairment are properly assessed at steps four and five and considering several factors for remand). In addition to the issues identified above, the ALJ is directed to consider Plaintiff's therapist's note that there is a possible psychological component to Plaintiff's pain, *see* AR 756, and to discuss whether Plaintiff's adjustment disorder, major depression, and panic disorder interrelate to limit her RFC. *See Williams v. Colvin*, 757 F.3d 610, 613, 615 (7th Cir. 2014).

Finally, in a footnote in her opening brief, Plaintiff contends that, in determining Plaintiff's RFC, the ALJ failed to consider his finding that Plaintiff has mild limitations in concentration, persistence, or pace. Although Plaintiff offers no argument as to what impact this mild limitation has on her functional capacity, on remand, the ALJ is directed to explicitly discuss any mild limitations found in the functional categories at step two when formulating the RFC. *See, e.g.*, *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *4 (N.D. Ill. Jan. 28, 2019) (remanding for consideration of mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace); *President v Berryhill*, N. 17 C 4910, 2018 WL 4282053, at *3 (N.D. Ill. Sept. 7, 2018) (requiring that a mild limitation in an area of mental functioning be analyzed in light of the claimant's other impairemnts when determinign the RFC).

    2.    *Physical*

    a.    Stooping

The ALJ found that Plaintiff has the RFC to perform light work and can occasionally stoop. AR 35. Stooping is defined as bending the body downward and forward by bending the spine at the waist. *See* SSR 83-14, 1983 WL 31254, at *4 (Jan. 1, 1983). Plaintiff contends that the record is

replete with testimony and Plaintiff's reports regarding her limited ability to bend. *See* AR 297 ("When I bend my body, it hurts my upper body and legs."); 301 ("I can't bend a lot . . . ."); 307 ("She has a hard time bending over when she bathes."; "[S]he has more pain bending."); 318 ("Hard to reach and bend and pick up things."); 325 ("I can't reach down as much without having pain."; "[W]hen I bend down to sit I have pain."); 327 ("I get pain pending over and can't lift heavy."); 329 (bending is affected by her impairments); 346 ("Bending gives me a lot of pain."); 445 ("Patient indicates Bending, carrying items worsens condition."); 492 (noting that Plaintiff experiences radiating pain down left left that is exacerbated by bending and lifting); 498 ("Patient indicates Bending, carrying items worsens condition."). Plaintiff testified that, when she worked at her last job, she would experience pain when she attempted to bend forward to pick up something from the floor. *See* AR 106. And, Plaintiff asserts that her left hip pain and resulting limited range of motion in her hip make it difficult to bend. *See* AR 696 (complaint of low back pain, left hip pain); 806 (left hip and leg pain); 815 (left hip pain); 844 (worsening left hip pain); 873 (left hip pain).

The Commissioner responds that Plaintiff's subjective complaints are insufficient to establish disability and that Plaintiff does not cite any medical evidence showing that she would be unable to stoop occasionally. The Commissioner is only partially correct. Plaintiff cites the medical findings that she has limited range of motion in her lumbar spine. AR 424 (2/9/2012), 553 (9/26/2014), 709 (3/30/2015), 842 (11/13/2014). Specifically, Plaintiff notes that, on September 26, 2014, Dr. Perez examined her for the Social Security Administration and found that her forward flexion of the lumbar spine was 50 degrees, when 90 degrees is normal. AR 550, 553. However, Plaintiff fails to acknowledge that, in completing an RFC form on October 1, 2014, medical consultant Dr. Brill

12

specifically considered Dr. Perez's September 26, 2014 examination report, noting "decreased ROM lumbar forward flexion," and then rated Plaintiff as able to stoop "frequently." *See* AR 130, 131. The ALJ specifically relied on Dr. Brill's opinion in making the physical RFC determination, giving the opinion great weight, which Plaintiff does not contest. AR 42. Moreover, despite giving the opinion great weight, the ALJ explicitly provided additional limitations in consideration of Plaintiff's subjective complaints. *Id.* One such additional limitation was restricting Plaintiff to "occasional" stooping rather than the "frequent" stooping Dr. Brill found Plaintiff was able to perform.

Accordingly, remand is not required on this issue. *Compare Mueller v. Colvin*, 524 F. App'x 282, 286 (7th Cir. 2013) (finding no conflict when a doctor who opined that the plaintiff could stoop occasionally relied on a different doctor's earlier finding of an ability to bend forward only 50 degrees); *with Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) (finding that the ALJ failed to resolve inconsistencies between the reviewing doctor's opinion that the plaintiff could stoop, kneel, crouch, and crawl occasionally, and the consultative examining doctor's finding that the plaintiff had only 50 degrees of flexion in the lower back and "was unable to squat" when the reviewing doctor had reviewed the examining doctor's report and also because the plaintiff had received significant treatment for her back in the nineteen months following the consultative examination); *Golembiewski*, 332 F.3d at 917 (remanding, in part, because the ALJ did not discuss an apparent conflict between the state agency physician's opinion that the plaintiff could stoop occasionally and a prior medical finding of 40 degrees of lumbar flexion). Nevertheless, on remand, the ALJ is encouraged to specifically address Dr. Perez's finding regarding flexion, Dr. Brill's reliance on that finding, and the other evidence of record regarding Plaintiff's ability to bend.

b.  Dizziness

Plaintiff contends that the ALJ failed to properly evaluate her dizziness. Without elaboration, Plaintiff cites several pages in the record in which she mentioned or reported dizziness. *See* AR 299 ("When I feel dizzy . . . I can't drive."); 459 (listed as reporting "dizziness and giddiness" on 8/26/2014); 462 (follow up for dizziness on 1/25/2010); 463 (treatment for dizziness); 478 (dizziness with head movement in January 2010); 479 (dizziness in 2009); 642 (dizziness box checked on review of systems on 11/21/2014); 693 (positive for dizziness on 4/10/2014); 710 (complained of vertigo on 3/14/2016); 840 (complained of dizziness on 10/9/2014).

In this case, the ALJ acknowledged Plaintiff's dizziness as a side effect from medication but then found that, although the complaints of dizziness were initially supported, they were not "supported in the longitudinal record," citing the treatment records from November 2011 to August 26, 2014. AR 41 (citing Ex. 2F). As a result, the ALJ found that the record did not support ongoing and persistent side effects from medication. *Id*. Plaintiffs argues that this conclusion is an error in light of her September 27, 2016 testimony, which was well after the 2014 records considered by the ALJ, that some of her medications make her dizzy. In her reply brief, Plaintiff contends that her dizziness was diagnosed as an independent impairment, unrelated to medications, citing the records at pages 463 and 840 of the record; however, both of those pages are found within the "longitudinal record" considered by the ALJ, and neither page elaborates on the diagnosis of "dizziness." Nevertheless, in light of Plaintiff's 2016 testimony regarding dizziness in relation to medications, the ALJ is directed on remand to consider Plaintiff's testimony regarding dizziness and her current medications and what effect, if any, there would be on her work-related abilities.

### B. Past Work

Plaintiff argues that the ALJ erred in finding that Plaintiff could do her past relevant work as a factory helper because the ALJ failed to make a finding of fact as to the specific mental and physical demands of the past job. The Court disagrees. At step four of the sequential analysis, if the claimant can still do her past relevant work in light of her RFC, the ALJ will find the claimant not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). In making the step four finding, the ALJ may rely on the testimony of a vocational expert regarding "the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b), 416.920(b). The "vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b), 416.920(b).

The Seventh Circuit Court of Appeals has held that "an ALJ cannot describe a claimant's job in a generic way—[such as] 'sedentary'—and conclude, on the basis of the claimant's residual capacity, that she can return to her previous work." *Nolen v. Sullivan*, 939 F.2d 516, 518-19 (7th Cir. 1991) (citing *Strittmatter v. Schweiker*, 729 F.2d 507 (7th Cir. 1984)). Rather, "the ALJ must list the specific physical requirements of the previous job and assess, in light of the available evidence, the claimant's ability to perform these tasks." *Id*. (citing *Strittmatter*, 729 F.2d at 509; SSR 82-62 (1982)).

15

In this case, the ALJ did not identify Plaintiff's past work simply as having been performed at the "light, unskilled level," as argued by Plaintiff. Rather, in the decision, the ALJ described Plaintiff's past work as a factory helper: "The claimant testified that she worked at Premier Candy Company sorting out good candy from scrap candy. She stated that the heaviest that she lifted was [ten] to [twelve] pounds. This job involved being on her feet." AR 43. This description is accurately taken from Plaintiff's testimony, which was heard by the vocational expert. *See* AR 102-103. Unlike in *Nolen*, in which there was evidence in the record that climbing ladders was a requirement of the claimant's past work but was not considered by the ALJ, Plaintiff does not identify any other physical requirements of her past work at Premier Candy Company that were included in the record but not considered by the ALJ. *See Nolen*, 939 F.2d at 518-19. When asked about her factory helper job, Plaintiff did not offer any testimony regarding bending or stooping.

Rather, based on Plaintiff's testimony, the vocational expert in turn testified that Plaintiff's past job as a factory helper was an unskilled job and that Plaintiff actually performed the job at the light work level. AR 118-19. The ALJ then asked a hypothetical question that included a light work RFC, and the vocational expert responded that the hypothetical individual could perform Plaintiff's past work as a factory helper as she actually performed it but not as generally performed. *Id.* at 120. Relying on this testimony, the ALJ found at step four of the sequential evaluation that Plaintiff could do her past relevant work as a factory helper. *Id.* at 43.

Plaintiff contends that, in light of her purported difficulties stooping and her mental impairments, the ALJ erred by failing to make specific findings regarding stooping and the mental demands of the factory helper job as she performed it. However, this argument is based on Plaintiff's

16

position in this appeal that the ALJ should have included greater limitations regarding stooping and mental impairments the RFC. Plaintiff does not argue that the step four finding was incorrect based on the ALJ's actual RFC findings made in his decision. In fact, the ALJ specifically included in the hypothetical to the vocational expert the limitation to occasional stooping that the ALJ included in the RFC. AR 120. Plaintiff reasons that neither the ALJ nor the vocational expert had any information about how much stooping was actually involved in Plaintiff's past factory work. But, the same could be said of any number of other nonexertional or mental limitations that the ALJ did not incorporate in the RFC because the ALJ found they were not supported by the record.

Accordingly, there is no error, and remand is not required on this issue. However, if on remand, the ALJ modifies the RFC, then additional factual findings regarding Plaintiff's past relevant work may be warranted.

### C. Other Work

Although the ALJ found at step four that Plaintiff could perform her past relevant work, the ALJ made the alternative finding at step five that Plaintiff could peform other light, unskilled jobs of housekeeper, cafeteria attendant, and label coder based on the vocational expert's testimony. AR 43-45, 120-21. Plaintiff argues that the ALJ erred by relying on the vocational expert's testimony because the ALJ did not include limitations in the hypotheticals based on mental impairments, an inability to stoop occasionally, or dizziness. As with her step four argument, Plaintiff has not shown that the ALJ failed to incorporate the RFC limitations actually found by the ALJ into the hypotheticals to the vocational expert. Rather, Plaintiff is arguing that the ALJ should have included additional limitations in the hypotheticals based on errors that Plaintiff perceives in the ALJ's RFC

determination. Accordingly, remand is not required on this basis. However, if the ALJ modifies the RFC on remand, then additional limitations in the hypotheticals posed to the vocational expert may be warranted.

Finally, without citation to law, Plaintiff argues that the hypothetical questions posed to the vocational expert failed to identify Plaintiff's educational level, which the ALJ found to be "a marginal education (6th grade) and is unable to communicate in English." AR 43. This argument is not well taken. Plaintiff's educational level and ability to communicate in English was established at the hearing. *See* AR 43, 104, 116. The vocational expert was present at the hearing. *See* AR 93. And, the ALJ asked the ALJ to assume a "hypothetical individual with the same age, *education*, and work history as the claimant." AR 120 (emphasis added). Remand is not required on this issue.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Memorandum in Support of her Motion to Reverse the Decision of the Commissioner of Social Security [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 12th day of March, 2019.

                                                s/ John E. Martin
                                                MAGISTRATE JUDGE JOHN E. MARTIN
                                                UNITED STATES DISTRICT COURT

cc:    All counsel of record